UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ECKERD CORPORATION,

   Plaintiff,

  v.

J&S, INC., BRISTOL
CONSOLIDATORS, INC., GHAZNAVI
INVESTMENTS, INC., G&G
INVESTMENTS, INC., and JOHN J.
GHAZNAVI, in their individual
capacities and as agents for THE
TEAMSTERS PENSION TRUST FUND OF
PHILADELPHIA & VICINITY

   Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 08-6252(JEI)

**OPINION**

**APPEARANCES:**

LITTLER MENDELSON, P.C.
By:  David I. Rosen, Esq.
One Newark Center, 8th Floor
Newark, NJ 07102
  Counsel for Plaintiff

THORP REED & ARMSTRONG, LLP
By:  Heather Janene Holloway, Esq., Ira B. Silverstein, Esq.
One Commerce Square
2005 Market Street, Suite 1000
Philadelphia, PA 19103
  Counsel for Defendants

**IRENAS**, Senior District Judge:

_____Presently before the Court are Plaintiff's Motion for
Summary Judgment and Defendants' Motion for Partial Summary
Judgment on the Enforcement Issue.  For the reasons set forth

1

below, Plaintiff's Motion will be granted and Defendants' Motion will be denied.[1]

## I.

This case arises out of a Settlement Agreement reached in *Einhorn v. J&S, Inc.*, 577 F. Supp. 2d 752 (D.N.J. 2008) (Irenas, S.D.J.) (hereinafter "the Fund-J&S Case"), between the Teamsters Pension Trust Fund of Philadelphia & Vicinity ("the Fund") and J&S, Inc.[2] ("J&S").  In the Fund-J&S Case, the Fund, through its Administrator, William J. Einhorn, sought to recover withdrawal liability from J&S pursuant to the Multiemployer Pension Plan Amendment Act ("MPPAA"), 29 U.S.C. § 1381, *et seq*.[3]  The Fund sought $723,824.04 in withdrawal liability, plus prejudgment interest, attorneys fees, and costs.  J&S then brought a third-party complaint against Eckerd Corporation ("Eckerd") alleging a number of common law contract claims, and that Eckerd was liable for the withdrawal liability as a joint employer under the MPPAA.

---

[1] This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1451

[2] The Defendants in both the Fund-J&S Case, and the instant case, are J&S, Inc., and its control group, including Bristol Consolidators, Inc., Ghaznavi Investments, Inc., and John Ghaznavi.  All the members of the control group are also parties to the Settlement Agreement.  They will be collectively referred to as "J&S."

[3] For a detailed recitation of the underlying facts in the Fund-J&S Case, see *Einhorn*, 577 F. Supp. 2d at 755-758.

*See Einhorn*, 577 F. Supp. 2d at 759.

The Court granted Eckerd's motion to dismiss and held that J&S could not assert a third-party claim against Eckerd for withdrawal liability under the MPPAA because J&S had failed to follow any of the procedures afforded by the statute to adjudicate Eckerd's alleged joint employer status, and that no statutorily implied cause of action for contribution or indemnification exists. *Id.* at 762-64. The Court specifically declined to "comment on how it would rule if [the Fund] were to bring a claim against Eckerd for a portion of the withdrawal liability." *Id.* at 763 n.22. The Court also directed J&S to pursue the contractually mandated arbitration with Eckerd to resolve the remaining common-law claims. *Id.* at 766.

On September 29, 2008, one week after the Court issued its Opinion and Order dismissing the third party complaint, the Fund and J&S entered into the Settlement Agreement presently at issue.[4]

---

[4] The Settlement Agreement, in pertinent part states:
1.  The Fund and [J&S] hereby agree that there was in fact a discontinuance of contributions to the Fund by [J&S] as a result of Eckerd discontinuing the Transportation Agreement.
2.  The Fund and [J&S] further agree that the amount of the Assessment is correct.
3. [J&S] agrees to make two payments to the Fund in order to satisfy the Settlement Amount as follows: First, $500,000 by October 1, 2008; and then $260,824.04 by November 1, 2008.
4.  The Fund agrees that [J&S] is its agent for the purposes of investigating and making any determination regarding Eckerd's liability relative to the Assessment. Further, the Fund agrees that Eckerd will have all

statutory rights set forth in ERISA to challenge any determination made by [J&S], as the agent of the Fund.

5.  The Fund and [J&S] agree to extend the statutory time limits for initiating arbitration pursuant to Section 4221 of ERISA, and ERISA Regulation 4221.3, in order for [J&S] to initiate, as an agent of the Fund, arbitration as to whether Eckerd is a joint employer.  Specifically, the Fund and [J&S} agree that the statutory time limit for the initiation of arbitration is extended to sixty days after the execution of this Agreement.

6.  The Fund and [J&S] agree that [J&S], as its sole cost and expense, and on behalf of the Fund, shall seek arbitration of the issue of Eckerd's joint employer status within the same statutory timelines for requesting arbitration of the Assessment that will be applicable to Eckerd.

7.  The Fund and [J&S] agree to seek a stay of the [Fund-J&S Case], pending completion of the arbitration proceeding and the arbitrator's determination with respect to Eckerd's joint employer status.

8.  If the arbitrator determines that Eckerd is not, in fact, a joint employer with [J&S], then [J&S] and Fund agree that the Fund shall accept the Settlement Amount and dismiss the [Fund-J&S Case].

9.  If the arbitrator determines that Eckerd is, in fact, a joint employer with [J&S], the Fund hereby assigns to [J&S] its right to seek reimbursement from Eckerd for the Settlement Amount, the balance of the Assessment in excess of the Settlement Amount ("Assessment Balance"), as well as [J&S]'s attorneys' fees and costs.

10.  The Fund and [J&S] agree that in pursuing Eckerd as a joint employer, [J&S] is the Fund's agent.  Pursuant to this Agreement, the Fund assigns to [J&S] all of its rights, obligations and duties under the statutory withdrawal liability provisions of ERISA as the Fund, including the right to make any determinations related to the Assessment relative to Eckerd, as well as pursue collection of the Assessment from Eckerd.  [J&S] agrees to indemnify, defend and hold harmless the Fund and its trustees, employees and agents, for any liability, damages, claims, losses, expenses, and attorney's fees related to the assignment of the Fund's rights, obligations and duties vis-a-vis Eckerd as contemplated by this Agreement.

11.  The Fund and [J&S] agree that if [J&S] is successful in obtaining from Eckerd any costs not covered by the

4

As part of the Settlement Agreement, J&S paid the Fund $760,824.04 (the "Settlement Amount"), and in return J&S was to become the Fund's agent and was assigned any rights the Fund would have had to pursue Eckerd for withdrawal liability.

On November 21, 2008, J&S sent a letter to Eckerd purporting to provide notice, pursuant to 29 U.S.C. § 1399(b), on behalf of the Fund, that Eckerd was being assessed withdrawal liability as a joint employer.  The letter makes demand for $723,824.04-the full amount of the withdrawal liability originally sought by the Fund against J&S-and sets forth a payment schedule.  The letter also informs Eckerd of it's right to request a review of the determination, and advises that J&S maintains its right to pursue statutory arbitration if necessary.  (J&S Moving Br. Ex. G.)

On December 4, 2008, Eckerd responded arguing that J&S could

---

Settlement Amount, including any interest relative to the Assessment paid to the Fund, then such amounts shall be paid to the Fund.  [J&S] shall, however, retain any amount attributable to attorney's fees as reimbursement to the direct costs incurred by [J&S] in connection with the [Fund-J&S Case].
12.  Upon completion of [J&S's] obligations to the Fund, as set forth under the terms of this Agreement, the Fund hereby agrees to release and forever discharge J&S, Inc., Bristol Consolidators, Inc., Ghaznavi Investments, Inc., and John J. Ghaznavi and each, any and all of their respective heirs, assigns, parent companies, affiliates, subsidiaries, successors, insurers, officers, directors, employees, managers, agents, and attorneys from any and all actions, liabilities, liens, debts, damages, claims, suits, judgments, executions and demands of every kind, nature and description that the Fund has, had, or may have against [J&S] in relation to [the Fund-J&S Case].
(Compl. Ex. A.)

not commence MPPAA arbitration proceedings against Eckerd and expressed its belief that the Settlement Agreement was an attempt to circumvent the Court's September 22, 2008, Order and Opinion. (Eckerd Moving Br. Ex. B.)  On December 8, 2008, the Court conducted a telephone conference with the parties, after which, on December 15, 2008, Eckerd filed the Complaint in the instant case.  In its Complaint, Eckerd seeks a declaratory judgment that the settlement agreement is not enforceable against it, a permanent injunction against any attempt by J&S to enforce the settlement agreement against Eckerd, and a declaration by the Court that Eckerd is not a "joint employer" for the purposes of the MPPAA.  Pursuant to a Stipulation approved by the Court on January 29, 2009, the parties have consented to bifurcate the "enforcement issue" from the remaining issues in the case, and presently move for summary judgment on that issue.[5]

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] Pursuant to the Stipulation, all statutory deadlines, as to both Eckerd and J&S, triggered by the November 21, 2008, letter, were stayed pending the resolution of the instant case. Likewise, the Stipulation stayed any contractual arbitration of J&S's common-law claims against Eckerd pending the resolution of this case, and are to be initiated within thirty days of the Court entering a judgment in this case.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986).

## III.

The Settlement Agreement purports to assign J&S various rights belonging to the Fund as follows:

> [T]he Fund hereby assigns to [J&S] its right to seek reimbursement from Eckerd for the Settlement Amount, the balance of the Assessment in excess of the Settlement Amount ("Assessment Balance"), as well as [J&S]'s

7

attorneys' fees and costs.

(Compl. Ex. A. at ¶ 9.)

> Pursuant to this Agreement, the Fund assigns to [J&S] all
> of its rights, obligations and duties under the statutory
> withdrawal liability provisions of ERISA as the Fund,
> including the right to make any determinations related to
> the Assessment relative to Eckerd, as well as pursue
> collection of the Assessment from Eckerd.

(Compl. Ex. A. at ¶ 10.)

The first issue before the Court is whether these provisions of the Settlement Agreement created a valid assignment of the Fund's rights to pursue the collection of withdrawal liability from Eckerd.  J&S argues that the Settlement Agreement properly makes J&S the Fund's agent, and assigns J&S any rights that the Fund might have relative to Eckerd, and that the only real question is whether Eckerd's rights have been materially affected by the assignment.  Eckerd argues that the Settlement agreement does not create a valid assignment, and violates both the MPPAA and public policy in that it is in fact an attempt to seek indemnification in spite of this Court's prior Opinion and Order.

To support its argument that the Settlement Agreement creates a valid assignment, J&S relies on *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 128 S. Ct. 2531 (2008).  In *Sprint*, a group of approximately 1400 payphone operators assigned their claims against long-distance carriers for unpaid fees to a group of aggregators for the purpose of collecting certain monies

8

owed to them.[6]  *Id.* at 2534.  In doing so, the operators assigned their rights, and appointed the aggregators their "true and lawful attorney-in-fact."  *Id.*  The aggregators then brought suit and the long-distance carriers challenged whether there was standing to do so.

The Supreme Court conducted an extensive survey of the history of assignments of legal claims in both this country and in England.  *Id.* at 2536-42, 2546-50.  The Court concluded "that courts have long found ways to allow assignees to bring suit; that were assignment is at issue, courts . . . have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection."  *Id.* at 2541.

In refuting the long-distance carriers' argument that the assignee's suit would not redress the payphone operators' injuries, the Court stated that "[t]hat inquiry focuses, as it should, on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation–not on what the plaintiff intends to do with the money he recovers."[7]  *Id.* at 2542.  Unlike

---

[6] 47 U.S.C. § 207 allows any person claiming to have been damaged by a common carrier to "bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter."  The long-distance carriers' conduct in *Sprint* was purportedly in violation of 47 U.S.C. § 226 and 47 C.F.R. § 64.1300.

[7] Interestingly, the Court noted that "[t]he aggregator and payphone operator then separately agreed that the aggregator

9

the aggregators in *Sprint*, who would be remitting the money to the assignor, pursuant to paragraph 11 of the Settlement Agreement, the Fund will only be able to recover if J&S is able to recover an amount from Eckerd greater than the Settlement Amount.[8]

There is a more significant distinction between the traditional assignment of a common-law collection claims, or even the statutory claim in *Sprint,* and the assignment of MPPAA rights purportedly created by the Settlement Agreement:  the former assignments are of rights to immediately bring suit against the offending party, whereas the latter involves an "intricate and detailed procedure [to] support[] the underlying goal of the MPPAA to bring about fast and efficient resolution to disputes over withdrawal liability."  *Einhorn*, 577 F. Supp. 2d at 760.

The assignability of rights may be limited by operation of law or by public policy.  *See In re Complaint of Weeks Marine,*

---

would remit all proceeds to the payphone operator and that the payphone operator would pay the aggregator for its services." *Sprint*, 128 S.Ct. at 2534.  The arrangement in this case is almost the complete opposite, where J&S will likely retain most, if not all of any amount recovered from Eckerd, and the Fund has little chance of seeing any substantial amount of money.

[8] This brings to the forefront the issue of what injury, if any, remains after the Fund received the Settlement Amount. However, as will be discussed, it is not necessary for the Court to address this issue to determine whether or not rights created by the MPPAA are assignable.  The specific impact of this provision of the Settlement Agreement is nonetheless discussed in greater detail in Part IV *infra*.

*Inc.*, No. 04-0494, 2006 WL 1843130, at *5-7 (D.N.J. June 30,
2006), *aff'd* 270 F. App'x 97 (3d Cir. 2008).  Both are applicable
to in the instant case.  The MPPAA creates an "intricate and
detailed procedure" involving multiple steps before a cause of
action could accrue.  *See Einhorn*, 577 F. Supp. 2d at 759-61
(outlining the MPPAA procedures in detail).  The statute requires
the plan to give the employer notice, affords the employer an
opportunity to respond, and then requires the plan to review the
employer's response before issuing a final decision.  29 U.S.C.
§ 1399(b).  The MPPAA further provides that either party may
initiate arbitration, subject to specific timing requirements,
for any dispute that still remains.  29 U.S.C. § 1401(a).  Only
after that may the parties file an action in court "to enforce,
vacate, or modify the arbitrator's award."  29 U.S.C.
§ 1401(b)(2).  Alternatively, if arbitration is not commenced,
the plan may bring an action to collect the amount owed.  29
U.S.C. § 1401(b).  Additionally, there are parallel paths,
equally dependant on the statutory framework and timelines,
available to assessed employers who wish to assert that it is not
in fact an employer or to bring a third-party into the withdrawal
liability proceedings.  *See Einhorn*, 577 F. Supp. 2d at 760-62.

    "Provisions for the quick and informal resolution of
withdrawal liability disputes are an integral part of MPPAA'a
statutory scheme."  *Flying Tiger Line v. Teamsters Pension Trust*

*Fund*, 830 F.2d 1241, 1244 (3d Cir. 1987).  Allowing a plan to assign its rights to recover withdrawal liability to a party that has already been assessed as an employer would clearly undermine this intricate statutory framework, and would interfere with the goals of ERISA and the MPPAA.

Furthermore, the Settlement Agreement and subsequent course of action taken by J&S serve to undermine this Court's Opinion and Order in the Fund-J&S Case.  The Court specifically held that J&S had waived all of its statutory remedies against Eckerd, and that the MPPAA does not provide for a cause of action for contribution or indemnification.[9]  As the Court explained:

> An employer who is assessed by a union pension fund for withdrawal liability has no independent cause of action under ERISA or the MPPAA to sue a third-party for contribution or indemnification on the theory that such a party is properly the sole or joint employer for the purposes of those statutes.

*Einhorn*, 577 F. Supp. 2d at 763-64.  However, the purported assignment nonetheless would have the effect of allowing J&S to proceed against Eckerd for the full value of the withdrawal liability and is not likely to result in any significant recovery by the Fund.

Pursuant to the Settlement Agreement, the Fund can only recover additional funds from Eckerd after J&S fully recovers the

---

[9] Additionally, as the Court noted, J&S conceded the latter point at oral argument in the Fund-J&S Case.  *Einhorn*, 577 F. Supp. 2d at 763 n.23.

12

Settlement Amount.  (Compl. Ex. A. at ¶ 11.)  As the Court noted
in the Fund-J&S Case, one of the options available to J&S that
would have been in accordance with the MPPAA "would have been to
pay the withdrawal liability, and then, in a separate action seek
indemnification or other common-law claims against Eckerd or
another third-party who they felt owed them money." *Einhorn*, 577
F. Supp. 2d at 762.  The Settlement Agreement is a thinly veiled
effort to allow J&S to seek indemnification of the Settlement
Amount from Eckerd, contrary to this Court's previous Opinion and
Order which ruled that there was no right of action under ERISA
or the MPPAA to seek contribution or indemnification from Eckerd.
*See Einhorn*, 577 F. Supp. 2d at 763-64.

Lastly, J&S's argument that the Settlement Agreement does
not deprives Eckerd of any rights it might otherwise be entitled
to only provides further support to the Court's conclusion that
the Settlement Agreement is an attempt to circumvent the Court's
Opinion and Order in the Fund-J&S Case.  J&S points to paragraph
4 of the Settlement Agreement which states that "the Fund agrees
that Eckerd will have all the statutory rights set forth in ERISA
to challenge any determination made by the Employer, as the agent
of the Fund."  (Compl. Ex. A at ¶ 4.)  However, this clause
merely pays lip service to the MPPAA's requirements and does not
have any actual meaning because J&S and the Fund cannot contract
to affect the rights of a non-party.  Likewise, J&S admits that

13

it is not attempting to enforce paragraph 5 of the Settlement Agreement which purports to extend the period of statutory arbitration for claims against Eckerd.  (J&S Op. Br. at 9 n.7.) The inclusion of provisions in the Settlement Agreement discussing the statutory rights of the parties and non-parties, when those provisions have no operative effect, serves to further support the dubious nature of the Settlement Agreement's assignment provisions.

Any purported assignment of MPPAA rights in this case would be in clear contravention of the MPPAA's intricate enforcement procedures, this Court's previous Opinion and Order, and public policy.  When (i) a fund seeks withdrawal liability under the MPPAA against a party it thinks is liable, (ii) that party fails to properly contest the withdrawal liability or assert in a timely fashion that a third-party is jointly or solely liable, (iii) the fund's claim for withdrawal liability becomes incontestable, and (iv) such party settles its liability to the satisfaction of the fund, any purported assignment or agency agreement giving such party the right to pursue another allegedly responsible employer under the MPPAA is invalid and contrary to public policy.  *See Einhorn*, 577 F. Supp. 2d at 759-62. Therefore, the purported assignment or agency agreement contained in the Settlement Agreement is not a valid basis to permit J&S to proceed against Eckerd for withdrawal liability.

14

**IV.**

Even if the Court were to assume, *arguendo*, that the Fund could make J&S its agent or assign its MPPAA rights, and any statutory or common-law defenses were overcome,[10] the issue remains as to what rights the Fund could actually assign to J&S or make J&S the collection agent.  In the Fund-J&S Case, the Fund sought withdrawal liability of $723,824.04 plus prejudgment interest, attorneys fees, and costs.  By virtue of the Settlement Agreement, the Fund has already been paid the full amount of the withdrawal liability, plus an additional $37,000.  J&S argues that there is still an existing claim for unpaid interest and fees, and that the Settlement Amount does not in fact make the Fund whole.  (J&S Moving Br. at 18.)  J&S further argues that entering into the Settlement Agreement was an effort to mitigate the damages in the instant case by ceasing the accrual of interest, which J&S argues is for Eckerd's benefit as well. (Id.)

Even accepting J&S's argument that the Fund settled for less that the full amount it was owed, and that it is acting on the Fund's behalf, the Fund could only assign to a third-party

---

[10] Among other objections to J&S's conduct in this case, Eckerd challenges that the Fund did not provide notice "as soon as practicable," and therefore the Fund, or J&S as its purported agent and/or assignee, is barred from pursuing any claim against them.  29 U.S.C. § 1399(b)(1).  The parties argue this point at some length in their briefs, but in light of the preceding and foregoing discussions, the Court need not resolve this issue.

amounts due above the $760,824.04 Settlement Amount.  Therefore, even if it were possible for J&S to act as the Fund's agent or for the Fund to assign its claim for withdrawal liability against Eckerd to J&S, any assignment would necessarily be limited to the amount the Fund had yet to recover.  Accordingly, no purported assignment or agency agreement could allow J&S to pursue Eckerd for any of the $760,824.04 already paid to the Fund.[11]

## V.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be granted, and Defendant's Motion for Partial Summary Judgment on the Enforcement Issue will be denied.  Any provision in the Settlement Agreement which purports to make J&S

---

[11] As more fully discussed in Part III, *supra*, Eckerd argues that despite J&S's insistence that it is merely pursuing the rights of the Fund, and acting solely on the Fund's behalf, the Settlement Agreement is actually a thinly veiled guise through which J&S is seeking the type of indemnification that the Court has explicitly ruled is not provided for in the MPPAA.  *See Einhorn*, 577 F. Supp. 2d at 763-64.  The Court agrees.

As Eckerd points out, pursuant to the Settlement Agreement, only "costs not covered by the Settlement Amount, including any interest relative to the Assessment paid to the Fund, . . . shall be paid to the Fund."  (Compl. Ex. A. at ¶ 11.)  However, it is only those "costs not covered by the Settlement Amount" to which the Fund could still possibly possess an assignable interest. This Court reaches no conclusion as to whether the Fund, in light of the Settlement Agreement with J&S, has any viable claim against Eckerd relating to withdrawal liability for amounts above the $760,824.04 Settlement Amount.  *Cf. Einhorn*, 577 F. Supp. 2d at 763 n.22 ("Furthermore, the Court makes no comment on how it would rule if [the Fund] were to bring a claim against Eckerd for a portion of the withdrawal liability.")

the agent of the Fund to collect from Eckerd any portion of the $760,824.00 paid to the Fund by J&S or purports to assign to J&S a claim against Eckerd in that amount is hereby declared invalid. Therefore, J&S will be permanently enjoined from pursuing Eckerd for withdrawal liability as either the Fund's agent or assignee. Furthermore, because this grant of partial summary judgment makes it unnecessary for the Court to decide whether Eckerd might have been a joint or sole employer for MPPAA purposes had that claim been pursued in a proper and timely manner, summary judgment will be granted to Plaintiff with respect to the entire case.  The Court will enter an appropriate order.

Dated: August 25, 2009

 s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**

17